## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA
## NORFOLK DIVISION

| | |
|---|---|
| LEE SPICER,<br><br>                    Plaintiff,<br><br>       v.<br><br>CHW GROUP, INC. d/b/a CHOICE HOME<br>WARRANTY,<br><br>                    Defendant. | )<br>)<br>)<br>)<br>)   **Case No.:**  2:18cv372<br>)<br>)<br>)<br>)<br>)<br>) |

## PLAINTIFF'S COMPLAINT

Plaintiff, LEE SPICER ("Plaintiff"), by and through his attorneys, alleges the following against Defendant, CHW GROUP, INC. d/b/a CHOICE HOME WARRANTY ("Defendant"):

### INTRODUCTION

1. Plaintiff's Complaint is based on the Telephone Consumer Protection Act., 47 U.S.C. § 227, et seq. ("TCPA").

### JURISDICTION AND VENUE

2. This court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337.

3. This court has federal question jurisdiction because this case arises out of violations of federal law.  47 U.S.C. § 227(b); *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740 (2012).

4. Venue and personal jurisdiction in this District are proper because Defendant does or transacts business within this District, and a material portion of the events at issue occurred in this District.

### PARTIES

5. Plaintiff is a natural person residing in Carrollton, Isle of Wight County, Commonwealth of Virginia.

1

6. Plaintiff is, and at all times mentioned herein, a "person" as defined by 47 U.S.C. § 153(39).

7. Defendant is, and at all times mentioned herein, a "person" as defined by 47 U.S.C. § 153(39).

8. Defendant is a New Jersey business corporation based in the Township of Edison, Middlesex County, State of New Jersey.

9. Defendant acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

## FACTUAL ALLEGATIONS

10. Within four (4) years of Plaintiff filing this Complaint, in or around June 2018, Defendant began calling Plaintiff's cellular telephone at xxx-xxx-5712 and landline telephone at xxx-xxx-3434, which included or introduced an advertisement or constituted telemarketing.

11. Within four (4) years of Plaintiff filing this Complaint, in or around June 2018, Defendant has called Plaintiff's cellular and landline telephones from at least, 732-638-2688, 732-379-5309, 732-394-6700, 732-339-3215, 732-339-3488, 732-339-3869, 732-947-5441, and 732-394-6700, which are some of the Defendant's many telephone numbers.

12. In or around June 2018, Plaintiff answered several calls placed by Defendant to Plaintiff.

13. During the aforementioned calls, Plaintiff told Defendant to stop calling him.

14. Despite Plaintiff's requests that Defendant stop calling Plaintiff, Defendant continued to call Plaintiff's telephones unabated.

15. None of the calls Defendant made to Plaintiff were for an emergency purpose.

16. All of the calls Defendants made to Plaintiff's telephones resulted in Plaintiff incurring a charge for incoming calls.

17. During at least one conversation, Defendant learned that Plaintiff wanted Defendant to stop calling Plaintiff's telephones.

18. Plaintiff has never given to Defendant prior express written consent to contact Plaintiff as described herein.

19. Even if Plaintiff provided Defendant with his telephone numbers, Defendant failed to provide Plaintiff with clear and conspicuous disclosure that Defendant would contact Plaintiff with an automatic telephone dialing system ("ATDS").

20. Even if at one point Defendant had prior express written consent to call Plaintiff's telephones, Plaintiff revoked this consent as described above.

21. Defendant continued to call Plaintiff's telephones after Defendant knew Plaintiff wanted the calls to stop.

22. Within four (4) years of Plaintiff filing this Complaint, Defendant used an ATDS to call Plaintiff's telephones.

23. When Plaintiff answered Defendant's calls, he was sometimes greeted with "dead air" whereby no person was on the other end of the line.  After several seconds, an agent was connected to the automated call then greeted Plaintiff and sought to speak with Plaintiff to solicit the sale of Defendant's products or services.

24. The telephone dialer system Defendant used to call Plaintiff's telephones has the capacity to store telephone numbers.

25. The telephone dialer system Defendant used to call Plaintiff's telephones has the capacity to call stored telephone numbers automatically.

26. The telephone dialer system Defendant used to call Plaintiff's telephones has the capacity to call stored telephone numbers without human intervention.

27. The telephone dialer system Defendant used to call Plaintiff's telephones has the capacity to call telephone numbers in sequential order.

28. The telephone dialer system Defendant used to call Plaintiff's telephones has the capacity to call telephone numbers randomly.

29. The telephone dialer system Defendant used to call Plaintiff's telephones selects telephone numbers to be called according to a protocol or strategy entered by Defendant.

30. The telephone dialer system Defendant used to call Plaintiff's telephones simultaneously calls multiple recipients.

31. The dead air that the Plaintiff may have experienced on the calls that he received is indicative of the use of an ATDS. This "dead air" is commonplace with autodialing and/or predictive dialing equipment. It indicates and evidences that the algorithm(s) being used by Defendant's autodialing equipment to predict when the live human agents are available for the next call has not been perfected and/or has not been recently refreshed or updated. Thus, resulting in the autodialer placing a call several seconds prior to the human agent's ability to end the current call he or she is on and be ready to accept the new connected call that the autodialer placed, without human intervention, to Plaintiff. The dead air is essentially the autodialer holding the calls it placed to Plaintiff until the next available human agent is ready to accept them. Should the calls at issue been manually dialed by a live human being, there would be no such dead air as the person dialing Plaintiff's telephones would have been on the other end of the call the entire time and Plaintiff would have been immediately greeted by said person.

32. As a result of Defendant's alleged violations of law by placing these automated calls to Plaintiff's telephones without prior express written consent, Defendant caused Plaintiff

harm and/or injury such that Article III standing is satisfied in at least the following, if not more, ways:

a. Invading Plaintiff's privacy;
b. Electronically intruding upon Plaintiff's seclusion;
c. Intrusion into Plaintiff's use and enjoyment of his telephones;
d. Impermissibly occupying minutes, data, availability to answer another call, and various other intangible rights that Plaintiff has as to complete ownership and use of his cellular and landline telephones; and
a. Causing Plaintiff to expend needless time in receiving, answering, and attempting to dispose of Defendant's unwanted calls.

## DEFENDANT VIOLATED THE TELEPHONE CONSUMER PROTECTION ACT

33. Defendant's conduct violated the TCPA by:

a. Placing non-emergency telephone calls to Plaintiff's cellular telephone using an automatic telephone dialing system and/or pre-recorded or artificial voice in violation of 47 U.S.C. § 227 (b)(1)(A)(iii).

WHEREFORE, Plaintiff, LEE SPICER, respectfully requests judgment be entered against Defendant, CHW GROUP, INC. d/b/a CHOICE HOME WARRANTY for the following:

34. As a result of Defendant's negligent violations of 47 U.S.C. § 227(b)(1), Plaintiff is entitled to and requests $500 in statutory damages, for each and every violation, pursuant to 47 U.S.C.  § 227(b)(3)(B).

35. As a result of Defendant's willful and/or knowing violations of 47 U.S.C. § 227(b)(1), Plaintiff is entitled to and requests treble damages, as provided by statute, up to $1,500, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

36. Plaintiff is entitled to and seeks injunctive relief prohibiting such conduct in the future.

37. Any other relief that this Honorable Court deems appropriate.

DATED:  July 12, 2018

RESPECTFULLY SUBMITTED,

By: /s/ Richard W. Ferris
      Richard W. Ferris, Esq.
      Virginia bar number 31812
      Ferris Winder, PLLC
      530 East Main St. Suite 300
      Richmond, VA 23219
      Phone: (804) 767-1800
      Fax: (888) 251-6228
      rwferris@ferriswinder.com
      Attorney for Plaintiff, Lee Spicer